WILLIAM F. HAMILTON, Respondent, *v.* LEON H. ROUSE, as President of TYPOGRAPHICAL UNION No. 6, an Unincorporated Association Consisting of Seven or More Persons, and Others, Appellants.

First Department, May 18, 1917.

Pleading — complaint — action against unincorporated labor union founded upon alleged violation of by-laws and constitution — priority of members as respects employment and discharge — complaint stating cause of action.

Action against the president of Typographical Union No. 6, an unincorporated association consisting of seven or more persons, to recover damages to the plaintiff, a member, caused by the fact that the action

of the executive committee of the union, which is alleged to be illegal and contrary to the constitution of the union, deprived the plaintiff of his position. The complaint in substance alleged that under the constitution of the international and local unions there was a priority law by which when compositors were discharged by reason of a necessary decrease in the force employed in printing offices, the men who were employed first were to be discharged last and the men who were discharged last were to be the first to be re-employed. He further alleged that while he was in the employ of a printing company, the controlling interest thereof was purchased by another publisher and that the local typographical unions or chapels, which had priority agreements with both of said publishers, met and passed resolutions alleged to be contrary to the constitution, as a result of which the employees of the purchasing company obtained a priority over the employees of the company by which the plaintiff had been employed, as the result of which he lost his position which was taken by an employee of the purchasing company. Complaint examined, and *held*, to state a cause of action and that a demurrer thereto was properly overruled.

APPEAL by the defendants, Leon H. Rouse, as president, and others, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 5th day of January, 1917, overruling their demurrer to the complaint.

*Alfred J. Talley*, for the appellants.

*Vincent P. Donihee*, for the respondent.

DAVIS, J.:

The grounds of the demurrer are that there is a defect of parties defendant, and also that the complaint fails to state facts sufficient to constitute a cause of action.

The defendant Rouse is president of Typographical Union No. 6, an unincorporated association consisting of more than seven members.

The plaintiff is a member of the local union No. 6. This local union is organized under a charter of the International Typographical Union of North America. All the members of the local union are members of the International union. The latter has a constitution which is the organic law binding on the subordinate local unions, as well as on all of its members. Under section 121 of the general laws of the International union there

exists what is known as a priority law. Under this priority law members of the union could be discharged only for incompetency, neglect of duty, violations of office rules or of the laws of the chapel or union, or in order to decrease the force employed in any printing office. Under this priority law in case of a decrease in the force, compositors were discharged in inverse order to that in which they were employed, and in case of an increase in the force the persons so discharged are reinstated in the reverse order to that in which they were discharged. That is, the men who were employed first were discharged last and the men who were discharged last were taken on first.

Under the constitution of Typographical Union No. 6, in every printing office where three or more members of that union were employed, those members were required to form themselves into a chapel and elect a chairman and a secretary.

The plaintiff was employed in the Sun Printing and Publishing Association's shop. This association was a member of the Publishers Association of New York City which has a working agreement with the Typographical Union No. 6, whereby members of that association employed in their printing offices only compositors who are members of Typographical Union No. 6. It was provided in this agreement between the Publishers Association and Typographical Union No. 6 that foremen of printing offices have the right to employ help and may discharge (1) for incompetency, (2) for neglect of duty, (3) for violation of office rules or of laws of the chapel or union, and (4) to decrease the force, such decrease to be accomplished by discharging first the person or persons last employed; and should there be an increase in the force the persons displaced through such cause should be reinstated in the reverse order in which they were discharged before other help may be employed.

In some printing offices there were departments and when the union recognized those departments this priority law would apply to each department, and where there were no departments in the printing office the priority law applied to the whole printing office as a unit.

It appears that at the times mentioned in the complaint the New York Press Company, Limited, maintained a printing office in the city of New York, publishing a newspaper known

First Department, May, 1917.            [Vol. 178.

as *The Press*, and that Frank A. Munsey had the controlling stock interest in the New York Press Company, Limited. It also appears that the Typographical Union No. 6 had organized their chapel in the printing office of the New York Press Company, Limited, and that its chapel maintained a priority list showing the priority standing of the various members of the chapel, and a similar chapel of Typographical Union No. 6 was in existence in the *Sun* office.

The complaint alleges that Frank A. Munsey announced that he had purchased the controlling stock interest in the Sun Printing and Publishing Association, whereupon during a recess of the Typographical Union No. 6 its executive committee authorized to act during recess, without notice to the plaintiff, made an order requiring the *Sun* chapel and the *Press* chapel to appoint a joint committee to prepare a joint priority list of the members of the *Sun* chapel and the *Press* chapel. Such committees were appointed, although the *Sun* chapel did so under protest. The members of the two committees prepared a joint priority list of the members of the *Sun* chapel and the *Press* chapel on a departmental basis. The *Sun* chapel did this also under protest. The result of this action was to give the former employees of the Press Company a position on the joint priority list superior to that of the plaintiff, with the result that the plaintiff lost his position and it was taken by some member of the *Press* chapel.

It appears that the Sun Printing Company employed about fifty-five compositors in its operators' department and before employing the members of the New York *Press* chapel the plaintiff was in such a position on the priority list that there were seven members of the *Sun* chapel who would have to be discharged before he was discharged, but when the Sun Printing Company employed the members of the Press Company's chapel in accordance with the new joint priority list made pursuant to the order of the executive committee of the union, the plaintiff was discharged because there were sufficient former employees of the New York Press Company on the joint list with a priority superior to the plaintiff's to render the services of the plaintiff unnecessary in a department employing fifty-five compositors.

The defendants other than Rouse are former members of the *Press* chapel and were employed in the *Sun* office solely by reason of the order of the executive committee establishing a joint priority list.

The plaintiff alleges that this action of the executive committee was illegal and contrary to the laws and constitution of the union, both local and international. The first ground of the illegality is alleged to be that the members of the Press Company's chapel obtained employment with the Sun Company not by reason of priority of employment with the Sun Company but by reason of priority of employment with the Press Company; *second,* that it is not contemplated that one member of the International Typographical Union should take the place of another member of that union except where such member has been discharged for incompetency, neglect of duty, violation of office rules or of laws of the chapel or union, or upon the voluntary resignation of such member from employment in a printing office. The plaintiff claims that he was discharged for none of these reasons but by the employment of a member of another chapel because of his priority in that other chapel. The plaintiff further alleges that the act of the executive committee was in violation of the contract between him and his union.

The action of the executive committee in approving the joint priority list upon the appeal of the plaintiff was reviewed by the union and sustained. There was a further appeal to the executive council and the action of the subordinate body was sustained. There was also an appeal to the convention which also sustained the action of the subordinate body. The plaintiff alleges that he has exhausted all his remedies under the constitution of the union, and he brings this action for the purpose of annulling and setting aside the order of the executive committee of Typographical Union No. 6 and the joint priority list made in conformity with their order, and to have his name placed on the priority list of the employees of the *Sun* chapel in the same position it would have been had the order of the executive committee not been made. He also asks incidentally for damages which he has suffered.

We are of opinion that the plaintiff has made a good complaint and that the order overruling the demurrer should be

First Department, May, 1917.    .    [Vol. 178.

affirmed.    The other ground of the demurrer that there is a defect of parties defendant is without merit.

The order overruling the demurrer is affirmed, with ten dollars costs and disbursements, with leave to defendants to withdraw demurrer and to answer on payment of costs in this court and at the Special Term.

CLARKE, P. J., LAUGHLIN, SCOTT and SHEARN, JJ., concurred.

Order affirmed, with ten dollars costs and disbursements, with leave to defendants to withdraw demurrer and to answer on payment of costs.